May it please the Court, I am Bruce Cohen, representing Petitioner Charles Rowland. We're here because the District Court found that the petition that I filed was untimely under AEDPA, and I'm here to attempt to convince the Court in the short amount of time that I have that it was timely under the actual law applied to the correct facts. I think it's clear that there's no precedent that the time a person spends looking for a lawyer is not equitably told, isn't it? Yes. That is what is not equitably told? Correct. Yes. I'm not arguing that, Your Honor. Okay. I'm arguing there's a line of demarcation in the claims in this case. Let me ask you this, though, because it's tied directly to Judge Kleinfeld's question and your answer. It appears to me that there was more than one year that elapsed between the time his State Court judgment became final and you agreed to represent him. Is that correct? That is correct. So how do we, I mean, and a year is fatal. So how do we get past the fact that more than one year elapsed before you were even retained, you are acting diligently and all that time is told? That may or may not be true, but for the purpose of the question, I'm assuming that. But how do you get past that initial more than one year period? Well, there are two very important ways, Your Honor. First, it wasn't until early 2003 that information really fell into my lap that, after further investigation, indicated, gave me the ability to allege in objective good faith that two of the principal witnesses against Mr. Rowland were, had felony prosecutions. That's your Brady point. Okay, that's the Brady point. Now, everything that I found before then and that Mr. Rowland could have found, let's say, arguably, on his own, these were not claims. They were not, there was no viable petition to be filed prior to that point. When did this fall into your lap, did you say? It fell into my lap, I read these files January of 2003. And the petition was filed November? Superior court petition was filed February 2004. That's well over a year, isn't it? It is. The receipt of the files did not provide me with a basis for alleging that there either had been a Brady violation or that there had been some kind of disclosure and trial counsel knew about it. It looked to me like you went from I don't have a case to I don't have a case but it's not going to get any better. I mean, you got the evidence that these two people had charges pending against them, but what is there to lie about? He tells the police, I just killed three people. And police say, nope, you're a loser, you just killed one person. And he says, I hope it was Jason, that little, I guess they call it a so-and-so in court. Well, Your Honor, this is not a case about did I, did I. Whether the guys are crooks and liars and have pending charges and were in the cop's pocket. I don't see where anything is where it got any better, actually. Well, it got better not just on the Brady. It actually got better because of another issue as well. But let me deal with both of those. This was my, Mr. Rowland testified as to what occurred. And these witnesses we're talking about were the witnesses against him. Mr. Rowland had no criminal record. He had been a fantastic paramedic, saved more lives in a day than I will save in my entire life. But then he saw a horrific thing. Okay, so post-traumatic stress. It would be nice for sentencing, and it would be nice if his defense was, I didn't do it. It's the difference between second-degree murder and voluntary manslaughter, which the jury was deadlocked on at one point. But the judge made them go back in, and then they came back with a second-degree murder verdict. And the difference between second-degree murder and unreasonable belief that I'm being attacked. And that was what Mr. Rowland said. It was Jason I killed, though. But he killed him. There was no, he knew that he had stabbed these people. So it's not a question of what happened. If you show they're bad guys, then it's more likely that they were attacking him. That's what he said, that they were attacking him. And Jason was not a bad guy, but he was a martial arts guy, kind of an innocent neighbor. But here's his trouble, and he's outside, and he takes his position. And Mr. Rowland had heard about his martial arts skills. Did Mr. Rowland testify they attacked me, though I was swinging a knife around to protect myself? Yes, he did. But I want to come back to the statute of limitations problem, because in a sense, we're sort of re-arguing the case itself. The best way I can get past that period before you're even in the case, which is longer than a year, and pass the question, well, do you get forgiven the period for purposes of the one-year Edba statute of limitations, the time you're looking for a lawyer, the general answer, of course, is no. And I'm not asking for that, Your Honor. But you have to, because a year has elapsed before the lawyer is retained. But under 2244 D1D, if using due diligence, you could not have arrived at an objective basis for these Brady claims, right? Well, you see, that's what I'm after. That is to say, are you arguing that if there is a Brady claim that arises out of looking at the trial record, what appears to be a misrepresentation, either overt or implicit, by the prosecution that we have no evidence, that if you find that evidence later on, then the statute of limitation hasn't run during the period when you have a misrepresentation by counsel, by the prosecutor, that the evidence didn't exist? That is absolutely correct. That's the argument, then. Well, there are two United States Supreme Court cases that say that. They're in my brief, and I have to say that the State doesn't address them at all, which may tell you that. You're saying, then, the year doesn't start until the prosecution, until the government discloses that the other two people were under charges. Or you stumble on it, as I do, and they investigate. Hold on. I can't hear you because I was talking, so I couldn't hear you. Are you saying that Brady, that the year doesn't start until the Brady disclosure is made by the government? I don't know that the government has to do it, but until the undisclosed information is disclosed and you are able to make a good faith allegation as to what kind of claim you have. Mr. Cohen, I'm with you all the way. You find this stuff in January of 2003. What I don't understand is why you didn't file the petition in January of 2004. Instead, you filed in November of 2004 after the time, after the one-year time, even from your discovery, had long expired. It's a good question, Your Honor, and the district court and my colleague here have the same question. And the reason is when, I mean, my client's father sent me these files. He'd been on a thousand wild goose chases, and he sends me the, okay, I look through the files. And it took me a while to realize, wait a minute, I mean, it seems like these guys had these pending cases. I don't remember anything like this in the transcript. Of course, I wasn't the appellate lawyer. I had to look through all of that. The 5,000 pages of trial counsel's files to figure out, did he have this information? What did he do with it? So that's when I come up with discovery orders. At what point are you unnoticed that you actually may have a Brady violation instead of, well, the file doesn't reveal that the prosecutor told the information. But it does sometimes happen that the prosecutor will orally say, you know, I've got these problems. At what point have you sufficiently excluded that possibility that you have a reasonable belief that this is really a Brady problem because you say, well, it was a well-respected prosecutor. You know, I didn't think the prosecutor would do that on purpose. At what point do you have a good faith belief that there really is a Brady problem and it wasn't well sort of communicated orally? Well, I would say normally, and this was my situation. In fact, the last thing I thought was that there had been a Brady violation. I thought there was an oral informal. No, no, I'm sorry, give me a date. At what point do you have, for the first time, a reasonable belief that there really was a Brady violation instead of the prosecutor who communicated this orally, but it didn't show up in the file? It was at least three months later. And the reason is because I asked trial counsel. He made me put this in writing because he was very hands-off, adversarial. And when he answered my questions in writing, because I was giving him this on a silver platter, this was not ineffective assistance, which was what made me. Three months later, from January of 2003? Yes, yes, because I called him once I reeled, once I reeled. That puts you to April of 2003. That's when the year could have started. Okay, but then you still have violence until November of 2004. It's still over a year. Well, that's Federal court. It's told statutorily for six months while it's in State court. So the actual cutoff would be, you know, would be something somewhere in as long as the statute didn't start running before mid-March of 2003 or something like that, then everything's timely. We're on the Brady claim. Because you're in State court with a properly filed State claim. Yes. And I was not defaulted in State court. It was properly filed. February of 2004 is when you filed in State court. Yes. That's right. So, I mean, I go through the calculations, of course, are mind-boggling, but can I just answer that? One really important question. When counsel wrote back his answers, which were unbelievably evasive, he didn't say, I never saw this information. So I just didn't know at that point whether he did or didn't. That actually made it harder for me to allege in good faith that there had been nondisclosure. I didn't know at that point. It wasn't until months later when I put the question to both of them again that I was able in good faith to say, you know, they're both stonewalling, they're both hiding something, and I can go with this. Excuse me, counsel, your time has expired. May give you 30 seconds anyway. Thank you, Your Honor. Definitely, Your Honor. Counsel. May it please the Court. When, in January of 2003, counsel thoroughly perused the files that he had received that he says inadvertently fell into his lap, and we can discuss that in a minute. I can't understand you. The statistics aren't that great. In January of 2003, after counsel had all the materials, all the physical materials about the possible new impeachment of the two prosecutorial and had thoroughly perused them and thoroughly scrutinized the defense counsel's trial record to find out that these materials weren't in the trial counsel's record, at that point, he had everything he was ever going to have. And the issue here is not whether he had better information later on. The issue is, at that point, did he have a colorable claim? Because if he didn't have a colorable claim then, he never had a colorable claim later. Is there a difference for your purpose? He never got anything more than that. Is there a difference for purposes of your argument between colorable claim and good faith claim? No. No, I'd say those are the same thing. But what if he thought, and I think legitimately so, that this is an upstanding prosecutor, and I don't think the prosecutor would deliberately have committed a Brady violation, yet the evidence is right here in front of me somehow that these two cases were being prosecuted by the very same office. I mean, I'm not sure at that point he has a good faith belief that a very obvious thing hadn't happened, which was to say, during the pretrial prep, the prosecutor had said to the defense lawyer, you know, you know I'm defending this. These are the two guys. Yes, I understand. Why is that not? What he had was, he had that the prosecutor represented that he had given everything to the defense lawyer. He had new information that things had not been given to the defense lawyer. He had the defense file, which had none of the new stuff in it. And he had the trial record in which none of this bad impeachment stuff had been put in front of the jury. That's what he had in there. But at that point, what he has is, if the prosecutor said I gave everything, that's consistent with I gave it either in writing or orally. And he may well then have an ineffective assistance of counsel claim, that is to say, if it had been given by the prosecutor, the defense guy didn't put it into process examination. Now he's bleep out of luck with respect to ineffective assistance of counsel, I think, with respect to his time witness. So we're only looking at the Brady. So isn't he at that point required, before he has a good faith claim, to do a little more checking as to what the defense counsel either did or didn't do or knew or didn't know? Respectfully, Your Honor, I disagree. I think at that point he had a good faith claim. He had this hole in the record. He had the information that was not in the defense counsel's file. He had the prosecutor's representation. You've got everything. He's got this hole in the record. And my point is he's never gotten anything more. If he had no good faith belief in January of 2003, he has not an iota more good faith belief now. Because all the prosecutor ever said is I don't want to talk to you. That's not evidence of anything. Can I interrupt? I'm sorry. But what more he has is the continuing evasiveness of defense counsel. What he has is the prosecutor saying I don't want to talk to you and the defense counsel saying you're a habeas counsel who's alleging multiple, already alleging multiple instances of incompetence by me. I don't really want to talk to you about this anymore. Take it to court. File your habeas petition. And if there's an OSC, you'll find out. But I just don't want to talk to you. All he had in January of 2003 was all he has today, which is the defense counsel doesn't want to talk to him. The prosecutor doesn't want to talk to him. That's totally routine in these cases. Let me ask you the earlier point that so far I think our discussion has been taken for granted, but I want to make sure where we are on this. With respect to the more than one-year period that elapses between the time the state court judgment is final and Mr. Cohen is retained, with respect to a Brady violation, a Brady violation at that time not disclosed by the counsel, I'll assume for the moment that we really do have an undisclosed Brady violation, is that time told? Do you agree with Mr. Cohen on that point? I can make an argument against that. I think it's probably our weakest argument. I could say that he's let this 20 months go by. When he came to the case, he started routinely looking at the files. I'm not asking you about when he came to the case. I'm asking you about the period before he comes to the case. I'm getting to that by saying whether it's somehow forgiven by what he did later on. No, I'm asking you a different question. Let me make sure what the question is. Let us assume that we have a Brady violation. Yes. We don't know that we had a Brady violation. It's a classic Brady violation. That is to say the prosecutor is in possession of the information. He has never handed it over. I think I understand the question. Knowing what we know from the defendant's standpoint about the trial, the defendant tries to find a lawyer, can't find a lawyer, waits more than a year before he retains a lawyer. Within a fairly short period after that lawyer is retained, the lawyer discovers the Brady violation and for purposes of my hypothetical promptly files in state court. Is the more than one year before the lawyer is retained forgiven for purposes of the statute of limitations or is the statute told during that period? I think if there was no way that he could have with due diligence found that information before 20 months or 20 years, I think it's forgiven. Even if during that period he was not exercising any actual, I mean, even if the only thing he was doing during that period was looking for a lawyer? Well, I don't want to give away too much, but I think the trend of the U.S. Supreme Court's decisions are that if he weren't doing anything during those 20 months, there's a strong argument based on precedent that he's forgiven if there were no, if there was nothing he could have possibly done. What precedent are you referring to? I don't have it at my fingertips. I believe it's in our, we discussed it in the briefs. But the centerpiece of your argument, because you see your argument here is a weak one. The centerpiece of your argument is that when he finally figures out that there are two guys being prosecuted by the prosecutor's office, that's when it starts to run. And the things that he did later to make sure to sort of work a little harder to see whether he had a good claim, you said that the period was already running. That's why you get 12 months. That's why it's not like a claim when you fall down in a muni yard for 90 days. That's why you get a year, because you're expected to spend 12 months doing a little investigation, finding out. He was perfectly justified in calling the DA, perfectly justified in calling defense counsel to try to work this up to get a better claim. And if he found some more facts, he could have put those in. But the point is, the cases are very clear. The question is, when were you first aware of the predicate facts? And every predicate fact that he has pleaded, he was aware of in January of 2003, the prosecutor's representation and the lack of that information in the defense file and the lack of the information at trial. That's all he had then. It's all he has now. All he adds to that now is that I called these guys and they don't want to talk to me. That doesn't add anything to his argument that it would not have been in good faith to file that then, because it's exactly what he's filed now. Kennedy. Was it in the public records? Ordinarily he had no trouble. Ordinarily convictions are in the public records. And ordinarily you can tell when the person was charged. Was it apparent from the public records that these two individuals were indeed facing charges, despite what the prosecutor had said to the defense lawyer? I don't want to get too deeply into the facts, because I don't know the facts. I had understood that at least for one of them that was. My understanding from defense counsel, from counsel's pleadings, is that he had no trouble. That was the weak argument that I did want to make about after the 20th, the exception to the Brady argument, is that in this case, it's not that nothing he could have done would have found these facts. In this case, he found them really easily. He went to the file, he found a problem in the file, and he started saying, well, jeez, there's, I'm sorry, darn, there's problems in this case with regard to impeachment of these prosecution witnesses. Maybe I'll pull all their cases. All he did, as far as I can understand, is he wrote a letter to the Santa Clara County court clerk, and the mail delivered these. That's how they fell into his lap. He called up the clerk, and he got them. That's my point, is that whatever the case in the 20 years where the prosecution had the evidence in it safe and didn't tell anybody about it, that may be one case, and that may excuse the fact that he didn't try to do anything in the 20 years, because it would have been utterly futile. In this case, it wouldn't have been utterly futile. If he'd hired the attorney after the 19th month instead of the 20th month, we would have gotten all this stuff one month earlier. If he'd hired him in the first month, we would have gotten it 19 months earlier, and that's why this can't be forgiven in this case, because even if the prosecutor did commit misconduct and didn't send this stuff over, this material over, as soon as the competent habeas attorney began investigating the case, in due course, he smoothly found all this information. Once he started investigating, we're not arguing that the two years it took him to get it is not told. Once he got it, he got it routinely, and that is why the initial 20 months is not forgiven, and it's also why the next period of the 13 months between the time he got the information, he perused it and scrutinized it, and eventually filed, of course, state habeas. Yeah. Now, if we take that argument and have that as sort of the touchstone as to what we do with a Brady violation, let's imagine a case which this, I think, is not, but let's imagine a case in which we have nothing. The only thing we possibly have is a Brady claim. We trust the prosecutor's peril. That is to say that we trust the prosecutor at our peril because the prosecutor should have handed over the material, did not hand over the material, and if the defendant says, I have simply no claim, the prosecutor wouldn't lie to me, would he? And then 15 months later, for some unrelated reason, all of a sudden it pops out that there's this information. Well, if he'd hired a lawyer and if the lawyer had investigated, the lawyer would have found it. You say, too bad. You never, never believe a prosecutor. You should have hired a lawyer right then because the prosecutor might have lied to you. Well, I have two or three responses to that. And I'm not saying that that is this case. I'm giving you a hypothetical. I understand, but it's close enough. I'm not sure that this counsel has any trouble in saying that I never believe. You may not say I always disbelieve prosecutors, but I'm not sure that this counsel or most counsel in California have any trouble saying, I never believe a prosecutor at face value. I don't think in the current atmosphere of habeas litigation that that's a problem. But under my hypothesis, it's the defendant who believed the prosecutor and he didn't get a lawyer until all of a sudden the information falls into his lap 15 months later. But, of course, the defendant has no right to a lawyer in a habeas proceeding. The main proceeding is the State appellate proceedings. And this is an additional proceeding. Of course, I understand that. In the safeguard area. Yeah. If my time is up, I would be eager to answer any questions. Thank you, counsel. Counsel, if you want to take 30 seconds, you can. The reason that I do that is just in case something new comes up in the Appellee's argument, the appellant gets a fair chance, but it's not enough time to say anything substantive beyond that. I would just say that the prosecutor was under a specific discovery order, never mentioned by the State, to disclose any pending prosecutions against these witnesses. I did find rap sheets in trial counsel's file. They didn't have any pending prosecutions. I didn't think there were any. They didn't show the date that the complaint or information or indictment was filed? No. No. For two out of the three, and the one that it mentioned, it just says end of message as though it had just been dismissed. So it was misleading. Do I understand that Jason was just a passerby, he was just a guy in the wrong place? He was a neighbor. He was in the wrong place at the wrong time. He was not involved in the original altercation. That's correct. How would the disclosure of the other witnesses have had a mitigating effect for, an exculpatory effect for Mr. Rowland with respect to Jason's murder? Well, there are two things, Your Honor. One is my client is on the stand telling the jury what happened, and so it's the honest but unreasonable defense. If they believe him, it's voluntary manslaughter. It's these witnesses who should have been impeached. But what did they say that? They said he was the aggressor. He's lying. He was the aggressor. Everything he says is wrong. That's one thing. The other thing is the Brady claim allowed me to raise Claim 12, which is at least as important and goes directly. He's the aggressor, but he's the passerby who's there after the event that happens in the house. But my client, there is this altercation. I mean, people are scared. He runs outside. If the prosecutor had disclosed truthfully and in a timely way, that would tend to show that the other two guys that Roland slashed were the aggressors. That they were lying. That they had a reason to lie. Right. That they had a reason to play the aggressor. Let's assume that the jury would have been persuaded. Those guys were the aggressors. Roland was not the aggressor. Not just that. It's that he was telling the truth. I'm sorry. Roland is telling the truth. And then he gets back out in the driveway, and there's Jason, the guy that he most hopes he killed. But Jason's not partying with Roland's wife. Jason's not in the house. There's no allegation. I don't think that Jason ever wielded any weapon against Roland. So how would it help Roland in his defense against Jason? It took a collage stance. This is what Chuck Roland testified to. And if the jury believed his testimony, this is what it goes to. His credibility. If they believed him. Yeah, let's say they think he's entirely credible. How does Jason wind up? How is Jason the aggressor? Jason, he's not really, but it's honest but unreasonable belief. They think your fellow is just a fine fellow with a bad head. He had post-traumatic stress disorder. He was crazy. How does it make Jason the aggressor? He doesn't have to be the aggressor in reality, Your Honor. The defense is based on the subjective state of mind of the defendant, who is crazy at this point and paranoid because of his post-traumatic stress. So he believes that he's being attacked. Put that in some legal category for me. No, Jason is a martial arts expert. Mr. Roland knows this. He knows about Jason. What is the legal category? It's not self-defense. It's called a flannel, people v. flannel, F-L-A-N-N-E-L. Is that imperfect self-defense? Is that what they call it? Yes, it's imperfect self-defense.     The defense is based on the subjective state of mind of the defendant. The defense is based on his honest but unreasonable belief that someone is attacking you, and that reduces second-degree murder to voluntary manslaughter. Can you verify that he had a belief that Jason was attacking him? Yes, absolutely. That was his testimony. Okay. Thank you, counsel. Thank you. I would just ask the Court to look at Claim 12. Counsel, we really are done. Thank you, Your Honor. Thank you, counsel.
judges: Kleinfeld, Silverman, Fletcher